Plaintiff, Co-Ex Plastics, Inc. ("Co-Ex"), appeals from a judgment in favor of Greg Gantt in which the judge disallowed Co-Ex's request to pierce the corporate veil and allow recovery individually from Gantt. A judgment in favor of Co-Ex against defendant *Page 38 
AlaPak, Inc. was granted. We affirm.
The facts of this case are largely undisputed and can be summarized as follows:
Gantt began a packaging and supply business in 1980, using the name Alabama Packaging and Supply, and he operated that business as a sole proprietorship until 1984, when he incorporated this business as AlaPak, Inc. Upon incorporation, Gantt transferred all assets and liabilities of "Alabama Packaging and Supply," sole proprietorship, to AlaPak, the corporation. As a result of this transfer, AlaPak assumed total assets of $591,894.55 and total liabilities of $580,054.48. The capital stock of the corporation was $1,000.00 and there existed $10,839.87 in paid-in capital. Soon after incorporation, AlaPak entered a financing arrangement with National Acceptance Corporation ("NAC") and entered loan transactions with First Montgomery Bank.
AlaPak and Co-Ex, a Tennessee corporation, commenced a supplier-purchaser relationship (open account) in July 1985, which continued to January 1986, during which time Co-Ex sold over $127,000.00 worth of goods to AlaPak. By January 1986, the account was overdue by approximately $35,000.00.
Co-Ex sued AlaPak and Gantt to collect the $35,000.00 owed. After a non-jury trial, the court awarded Co-Ex $35,000.00 against AlaPak and entered judgment in favor of Gantt, refusing to pierce the corporate veil. Co-Ex filed a motion to alter, amend or vacate the judgment and for a new trial; the trial court amended its judgment to award Co-Ex a total of $41,825.00, which included interest, but again denied Co-Ex relief against Gantt.
Evidence was presented at trial indicating that Gantt, the sole stockholder and director and the principal officer of AlaPak:
1) could not produce a stock certificate;
 2) had retained the "Alabama Packaging and Supply Company" bank account as AlaPak's bank account; and
 3) had continued to use the "Alabama Packaging and Supply Company" checks because, he stated, he lost the AlaPak checks.
It was further shown that Gantt had not signed checks in a representative capacity and that Gantt also varied the manner in which he referred to the corporation, i.e., "AlaPak," "Alabama Packaging and Supply Co.," and "Alabama Packaging and Supply, Inc."
AlaPak closed its doors in August 1986, after NAC withdrew its line of credit. A bankruptcy petition was prepared thereafter, but was not filed, which disclosed a total of $391,500.30 owed to unsecured creditors and $110,000.00 in accounts receivable subject to a security interest in favor of NAC and inventory of $72,000.00 existing.
Three issues are presented on appeal:
1) Did Gantt operate AlaPak in such a manner that the corporate veil should be pierced and he be held individually liable for the debts of the corporation?
2) Did the trial court erroneously apply the law, so that theore tenus rule does not apply to this appeal?
 3) Did the trial court err in allowing Gantt to prove AlaPak's corporate existence through use of parol evidence?
The concept that a corporation is a legal entity existing separate and apart from those who compose it is a well-settled rule in the State of Alabama. Cohen v. Williams, 294 Ala. 417,420, 318 So.2d 279, 280 (1975) (quoting 18 Am.Jur.2dCorporations § 14 at 559 (1965)). It is also a well-settled rule in this State that the corporate form can be set aside, and the individual or individuals owning all of its stock and assets can be treated as the business entity, even in the absence of fraud, as a means of preventing injustice or inequitable consequences. Cohen, 294 Ala. at 421,318 So.2d at 281. This Court has also held:
 A separate corporate existence will not be recognized when a corporation is so organized and controlled and its business so conducted as to make it a mere instrumentality of another or the alter ego of the person owning and controlling it. *Page 39 
Woods v. Commercial Contractors, Inc., 384 So.2d 1076, 1979
(Ala. 1980).
Co-Ex first contends that AlaPak was merely an instrumentality of Gantt, and that this was shown by Gantt's failure to follow corporate formalities in the course of its business, i.e., the failure of Gantt to produce a stock certificate; the retention of the Alabama Packaging and Supply Company bank account, and the continued use of the Alabama Packaging and Supply Company checks, which were never shown to have been signed in a representative capacity. Gantt, on the other hand, argues that Co-Ex knew or should have known that AlaPak was a corporation and acknowledged, AlaPak, as such, and therefore, that no fraud can be inferred from AlaPak's neglect of corporate formalities. We find AlaPak's argument persuasive on this issue. We have held that in the absence of fraud or inequity, the sole shareholder in a corporation will be protected from individual liability by the corporate entity,Washburn v. Rabun, 487 So.2d 1361 (Ala. 1986). In this case, the mere fact that minor formalities, such as those cited by Co-Ex in the business operations of AlaPak, were not followed does not rise to such a level that the corporate veil should be pierced. There is no indication in the record that AlaPak attempted to fraudulently induce Co-Ex into any contractual arrangements, nor is there any indication that the ends of justice would be disserved if the corporate veil were not pierced.
Co-Ex also argues that AlaPak was under-capitalized and, therefore, that the corporate veil should be pierced. Co-Ex suggests that the $1,000.00 of capital stock and the $300,000.00 business credit line were inadequate to cover the potential debts of the corporation. Gantt counters by arguing that AlaPak conformed to the general operating standards of one-man corporations and argues that Co-Ex did not rely on any representation regarding AlaPak's financial condition when it contracted with it, and that Co-Ex initiated an inadequate inquiry into the financial status of AlaPak. Gantt further argues that at the time of incorporation, AlaPak's assets exceeded its liabilities. We find Gantt's argument persuasive. We recently held in East End Memorial Ass'n v. Egerman514 So.2d 38 (Ala. 1987), that "a party who has contracted with a financially weak corporation and is disappointed in obtaining satisfaction of his claim cannot look to the dominant stockholder or parent corporation in the absence of additional compelling facts." 514 So.2d at 44, quoting Tigrett v. Pointer,580 S.W.2d 375, 382 (Tex.Civ.App. 1978). No evidence was presented showing that Co-Ex inquired about the status of AlaPak, other than through a bank credit check, nor was there any evidence that Co-Ex requested a personal guarantee from Gantt.
Voluntary creditors of corporations are held to a higher standard because they "are generally able to inspect the financial structure of a corporation and discover potential risks of loss before any transaction takes place. Consequently, courts are less sympathetic with voluntary creditors who, having had the opportunity of inspection, nevertheless elected to transact with an undercapitalized corporation."Disregarding the Entities of Closely Held and Parent-SubsidiaryCorporate Structures, 12 Cum.L.Rev. 155, 165 (1981). We, therefore, must affirm the trial court's refusal to pierce the corporate veil for the reasons advanced by Co-Ex.
The rule in Alabama as to ore tenus evidence, is, as stated in Barrett v. Odum, May DeBuys, 453 So.2d 729 (Ala. 1984), that "every presumption will be indulged in favor of the trial court, and its findings will not be disturbed on appeal unless palpably wrong or clearly erroneous." Co-Ex contends that the trial court erred in its reliance on Paddock, Smith Aydlottev. WAAY Television, 410 So.2d 106 (Ala.Civ.App. 1982), to decide the issues in this case because, it says, many evidentiary features distinguish the two cases. We must disagree. We find the following similarities in Paddock
sufficient to uphold the trial court's reliance on that case:
1) Paddock, Smith Aydlotte ("Paddock") was a duly formed corporation.
2) No evidence of Paddock's corporate status was intentionally concealed. *Page 40 
3) WAAY failed to make adequate inquiries into the financial status of Paddock. Similar factors were present in the instant case. Therefore, we will not disturb the trial court's use of that precedent as a yardstick in evaluating the evidence in this case.
The final issue Co-Ex presents for our review is whether the trial court erred in allowing Gantt to present parol evidence to prove AlaPak's corporate existence.
Co-Ex argues that testimony regarding the drafting of the bylaws by the Birmingham attorney who drafted them was admitted in error. Co-Ex argues that evidence of AlaPak's failure to produce these original records is admissible against the corporation and lends credence to the argument that the corporation did not exist. Co-Ex cites Meriwether v. CrownInvestment Co., 289 Ala. 504, 268 So.2d 780 (1972), in support of this proposition, and it further argues that the evidence that AlaPak failed to keep proper records should not be contradicted by parol evidence. 32A C.J.S. Evidence § 892 (1964).
Gantt contends that the sufficiency of preliminary proof of loss or unavailability of original records is within the discretion of the trial judge, citing Powell v. Hopkins,288 Ala. 466, 262 So.2d 289 (1972); Sims v. Callahan, 269 Ala. 216,112 So.2d 776 (1959); J.R. Watkins Co. v. Goggans, 242 Ala. 222, 5 So.2d 472 (1941); American Fire Casualty Ins. Co. v.Bryan, 379 So.2d 605 (Ala.Civ.App. 1979). It also argues that when the original document and copies of it are unavailable, this Court has affirmed the trial court's admission of oral testimony regarding a document, Johnson-Rast Hays, Inc. v.Cole, 294 Ala. 32, 310 So.2d 885, 899 (1975). The general rule in this State is stated in Hibbett Sporting Goods, Inc. v.Biernbaum, 375 So.2d 431 (Ala. 1979), quoting 3 A. Corbin,Contracts, § 573 at 357 (1960).
 "The parol evidence rule is explained by Corbin as follows:
 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' 3 A. Corbin, Contracts, § 573, at 357 (1960), cited in Richard Kelley Chevrolet Co., Inc. v. Seibold, 363 So.2d 989, 993
(Ala.Civ.App. 1978)."
Several exceptions to the parol evidence rule exist. It is well settled that the parol evidence rule does not apply to non-jural 2acts. 32A C.J.S. Evidence § 928 (1964) states:
 "The parol evidence rule applies only to jural acts, and only where enforcement of an obligation created by the writing is substantially the cause of action. A writing which does not vest, pass, or extinguish any right either by contract, operation of law, or otherwise, and which is used as evidence of a fact rather than as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts."
In the present case we find the bylaws of AlaPak to be a nonjural record of the corporation, because Code of Alabama 1975, § 10-2A-94, dictates that the corporation is in existence upon the filing of the articles of incorporation with the probate judge, and that the certificate of incorporation issued by the probate judge is conclusive evidence that a corporation has been incorporated in this State. Therefore, the by-laws of the corporation, though important in determining the adherence to corporate formalities, do not vest, pass, or extinguish any right of the corporation, and, therefore, their existence can be proved by extrinsic evidence.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES and STEAGALL, JJ., concur.
JONES, J., concurs in the result. *Page 41