664 So.2d 869 (1994)
ECON MARKETING, INC.
v.
LEISURE AMERICAN RESORTS, INC., et al.
1930388.
Supreme Court of Alabama.
August 12, 1994.
As Modified on Denial of Rehearing April 14, 1995.
On Second Application for Rehearing June 30, 1995.
Robert W. Beasley and Frank B. Potts of Potts & Young, Florence, for appellant.
Jesse A. Keller of Keller, Cochran & Pitts, P.C., Florence, Charles Cleveland of Cleveland & Cleveland, P.C., Birmingham, for appellees.
STEAGALL, Justice.
Econ Marketing, Inc. ("Econ"), appeals from a judgment entered in favor of Leisure American Resorts, Inc. (hereinafter "L.A.R."); American Leisure Resorts, Inc. (hereinafter "A.L.R."); John Carner; and Rick Stafford, in an action to recover payment for goods sold and services rendered.
Econ entered into a contract with American Leisure Marketing (hereinafter "A.L.M."), which, at the time this complaint was filed, had changed its name to Leisure American Marketing, Inc. (hereinafter "L.A.M."), whereby Econ agreed to provide goods and services for the marketing of certain timeshare resorts. L.A.R. was the parent company of the corporations that owned or had an interest in these timeshare resorts. Carner and Winston Biggs were majority stockholders in, and directors of, L.A.R. and L.A.M., and Stafford was the vice-president in charge of finance at L.A.R.
After Econ was not paid for goods sold to and services rendered to L.A.M., Econ sued L.A.M., A.L.M., Biggs, Carner, Stafford, and various fictitiously named defendants, seeking payment of the debt. Specifically, Econ alleged: (1) that the debt was for goods sold to and services rendered to L.A.M.; (2) that L.A.M. and A.L.M. are alter egos; (3) that *870 certain fictitiously named parties were the beneficiaries of the goods and services provided by Econ; (4) that L.A.M. was undercapitalized and that it did not follow corporate formalities; and (5) that the defendants owed Econ on an open account and for goods sold and services rendered.
The trial court entered a default judgment against A.L.M. Econ then amended its complaint, substituting L.A.R., A.L.R., and Carner, doing business as L.A.R. and A.L.R., for fictitiously named parties and alleging that these defendants had been unjustly enriched and that L.A.M. was the alter ego or instrumentality of these defendants. Subsequently, the trial court entered a default judgment against L.A.M. and granted Econ's "motion to sever" the claims against Biggs. After an ore tenus proceeding, the trial court entered a judgment in favor of L.A.R., A.L.R., Carner, and Stafford. From that judgment, Econ appealed.
Econ argues that the corporate veil should be pierced and the defendants held liable for the debt under the alter ego theory.
The factors to be considered when determining whether to pierce the corporate veil are well established:
"`Piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in this state. Co-Ex Plastics, Inc. v. AlaPak, Inc., 536 So.2d 37 (Ala. 1988). Alorna Coat Corp. v. Behr, 408 So.2d 496 (Ala.1981). The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate identity. Messick v. Moring, 514 So.2d 892 (Ala.1987); Forester & Jerue, Inc. v. Daniels, 409 So.2d 830 (Ala.1982). The fact that a corporation is under-capitalized is not alone sufficient to establish personal liability. Co-Ex Plastics, Inc. v. AlaPak, supra; East End Memorial Association v. Egerman, 514 So.2d 38 (Ala.1987). To pierce the corporate veil, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences. Washburn v. Rabun, 487 So.2d 1361 (Ala.1986); Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975).
"`. . . .
"`... Where the law recognizes one-man corporations, it is obvious that the law accepts the fact of domination by one person. See Ala.Code 1975, §§ 10-2A-90, 10-2A-58, 10-2A-57; Co-Ex Plastics, Inc. v. AlaPak, Inc., supra. Therefore, mere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. Messick v. Moring, supra; Washburn v. Rabun, supra.
"`The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation. See, e.g., Forester & Jerue, Inc. v. Daniels, supra; Hamrick v. First National Bank of Stevenson, [518 So.2d 1242 (Ala.1987)]; Deupree v. Ruffino, 505 So.2d 1218 (Ala.1987); Messick v. Moring, supra; East End Memorial Association v. Egerman, supra.'"
Backus v. Watson, 619 So.2d 1342, 1345 (Ala. 1993), quoting Simmons v. Clark Equipment Credit Corp., 554 So.2d 398, 400-01 (Ala. 1989).
Based upon the facts presented in this case, we hold that the trial court erred in not piercing the corporate veil of L.A.M. after hearing all the evidence. There was evidence that L.A.M. failed to keep complete and correct records of all transactions of the corporation and minutes of the proceedings of its shareholders and board of directors. Specifically, L.A.M. did not have its executed contract with L.A.R. by which L.A.M. was to provide goods and services to L.A.R.'s subsidiaries. *871 Moreover, the financial records, books, or minutes of the meetings of L.A.M.'s board of directors cannot be located. Carner made personal loans to L.A.M., but failed to produce a note evidencing these loans. L.A.R., as an accommodation and using its federal tax identification number, opened a checking account for L.A.M.; however, no documents were produced to show this relationship. The provisions of § 10-2A-79(a) were disregarded. No record of corporate transactions was kept; contracts could not be found.
There was no evidence that L.A.R., A.L.R., or Stafford owned stock in L.A.M. or that Stafford was an officer or director of L.A.M. However, the undisputed evidence shows that Carner was a stockholder and director of L.A.M., and, because it is undisputed that L.A.M. totally disregarded the corporate formalities required by § 10-2A-79(a), Carner is, under the particular facts of this case, personally liable for the debt, under the alter ego theory.
As to L.A.R., A.L.R., and Stafford, the judgment is affirmed; as to Carner, the judgment is reversed, and this cause is remanded for action consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, and INGRAM, JJ., concur.

On Application For Rehearing
BUTTS, Justice.[*]
OPINION MODIFIED; APPLICATION OVERRULED.
MADDOX, SHORES, HOUSTON, and INGRAM, JJ., concur.

On Second Application For Rehearing
BUTTS, Justice.
APPLICATION OVERRULED.
MADDOX, SHORES, and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
I would add the following from Simmons v. Clark Equipment Credit Corp., 554 So.2d 398, 401 (Ala.1989), to this opinion:
"In the absence of undisputed evidence that some or all of these factors existed, the trial court could not conclude that there was no genuine issue of fact and that piercing the corporate veil was required as a matter of law."
In Simmons, the trial court's summary judgment piercing the corporate veil was reversed, because there was a material issue of fact as to whether there was sufficient evidence to pierce the corporate veil. In this case, the court held an ore tenus proceeding, after which it entered a judgment in favor of L.A.R., A.L.R., Carner, and Stafford. A majority of this Court held that the trial court erred in not piercing the corporate veil of L.A.M., in this case, because the recognition of the corporate existence, under the facts in this case, would result in injustice or inequitable consequences.
NOTES
[*] Although Justice Butts was not a member of this Court when this case was orally argued, he has listened to the tape of oral argument and has studied the record.